UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **TRI-POINT OIL & GAS PRODUCTION SYSTEMS, LLC**, *et al.*, | § | **Case No. 20-31777** |
| | § | |
| | § | **(Joint Administration Pending)** |
| Debtors.[1] | § | **(Emergency Hearing Requested)** |

**DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL
ORDERS (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE
OPERATING THEIR CASH MANAGEMENT SYSTEM, (B) HONOR
CERTAIN PREPETITION OBLIGATIONS, AND (C) MAINTAIN EXISTING BANK
ACCOUNTS AND BUSINESS FORMS, AND (II) GRANTING RELATED RELIEF**

> **EMERGENCY RELIEF HAS BEEN REQUESTED. A HEARING WILL BE CONDUCTED ON THIS MATTER ON MARCH 18, 2020, AT 2:30 P.M. IN COURTROOM 400, 4TH FLOOR, 515 RUSK STREET, HOUSTON, TEXAS 77002. IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **RELIEF IS REQUESTED NOT LATER THAN MARCH 18, 2020.**

Tri-Point Oil & Gas Production Systems, LLC ("Tri-Point") and certain of its affiliates, as debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") hereby move (the "Motion") this Court for entry of interim and final orders substantially in the forms attached hereto under sections 105(a), 345, 363, 364, and 503 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), and Rule 9013-1(i) of the Bankruptcy Local Rules for the Southern

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Tri-Point Oil & Gas Production Systems, LLC (2419); FR Tri-Point, LLC (3967), Tri-Point Services GP, LLC (5463), and Tri-Point Services, LLC (0783). The address of the Debtors' headquarters is: 5555 San Felipe, Suite 1250, Houston, Texas 77056.

District of Texas (the "Bankruptcy Local Rules"), authorizing the Debtors to (i) operate their Cash Management System, (ii) honor certain Prepetition Obligations, and (iii) maintain certain Bank Accounts and Business Forms (each such term as defined below). In support of the Motion, the Debtors rely upon and incorporate by reference the *Declaration of Jeff Martini in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), filed with the Court concurrently herewith. In further support of the Motion, the Debtors, by and through their proposed undersigned counsel, respectfully represent:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. § 1408.

2. The statutory predicates for the requested relief herein are Bankruptcy Code sections 105(a), 345, 363, 364, and 503, Bankruptcy Rules 6003 and 6004, and Bankruptcy Local Rule 9013-1(i).

## EMERGENCY CONSIDERATION

3. Pursuant to Bankruptcy Local Rule 9013-1(i) and Bankruptcy Rule 6003, the Debtors request emergency consideration of this Motion. Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." FED. R. BANKR. P. 6003. Failure to receive the requested relief during the first 21 days of the Chapter 11 Cases (as defined below) would severely disrupt the Debtors' operations at this critical juncture. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard. The Debtors respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

2

10425302v6

**BACKGROUND**

4.      On March 16, 2020 (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").

5.      The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

6.      To date, no creditors' committee has been appointed in the Chapter 11 Cases by the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee"). No trustee or examiner has been appointed in the Chapter 11 Cases.

7.      The Debtors are a provider of oil and gas production and processing equipment and services headquartered in Houston, Texas with operations in the Permian, Mid-Con and Rockies regions. The Debtors' services include engineering and design, manufacturing, installation, start-up, rentals, refurbishment and after-market field maintenance.

8.      The Debtors filed these Chapter 11 Cases to facilitate the orderly liquidation of their assets.

9.      Additional information regarding the Debtors and the Chapter 11 Cases, including the Debtors' business operations, capital structure, financial condition, and the reasons for and objectives of the Chapter 11 Cases, is set forth in the First Day Declaration, filed contemporaneously with this Motion.

**THE DEBTORS' CASH MANAGEMENT SYSTEM**

10.     The Debtors' cash management system is used to collect, transfer, and disburse funds generated from their operations and to facilitate cash monitoring, forecasting, and reporting, while minimizing costs. Cash management flow is characterized in a linear process.  All accounts are held at Wells Fargo Bank, N.A. ("Wells Fargo"), which is the Debtors' senior secured lender

and proposed DIP lender. Receipts from operations, which include checks, ACH, and wires, flow into a collections account (x-1794). The collections account is a "Lockbox Account" and the funds in this account are swept daily to the Wells Fargo revolving credit facility. The operating disbursement account (x-1786) draws on the Wells Fargo credit facility as demanded by the Debtors' business operations. The operating disbursement account funds operating payments, which include checks, ACH, and wires, and debt service. Further, all payroll disbursements, including insurance and tax withholdings, are drawn from a zero balance account (x-1689), which draws from the operating disbursement account (x-1786) one business day before the payroll date. Payroll disbursements are drawn on a bi-weekly cycle, with one week in arrears. Lastly, the Debtors have a dormant holding account (x-1671) and a buffer account with no activity (x-1663). The Debtors seek to maintain that system on a postpetition basis to ensure that the Debtors are able to fund operations during the case.

11.     The proposed postpetition cash management system (the "Cash Management System") includes three bank accounts (collectively, the "Bank Accounts") and a number of corporate credit cards for employees under the WellsOne Commercial Card Agreement, dated on or around May 9, 2018 (as amended, restated, supplemented or otherwise modified from time to time, the "Card Agreement"), between the Debtors and Wells Fargo Bank, N.A, all controlled by the Debtors and all with Wells Fargo (the "Bank"). The indebtedness owed by Debtors to Wells Fargo in respect of the Card Agreement was secured by certain collateral (the "Collateral") pursuant to the terms of that certain Credit Agreement, dated as of December 20, 2017, between Debtor, Tri-Point Oil & Gas Production Systems, LLC and Wells Fargo, as such agreement may have been amended, restated, supplemented or otherwise modified from time to time. The Debtors'

10425302v6

three Bank Accounts and a cash management schematic is attached hereto as **Exhibit A**.[2] The Bank is included in the U.S. Trustee's List of Approved Depositories.

12. Contemporaneously with the filing of this Motion, the Debtors have filed a motion to obtain postpetition financing from Wells Fargo. The proposed financing will be provided to the Debtors' operating disbursement account (x-1786) at Wells Fargo and then payments will be disbursed from this account pursuant to the postpetition financing budget (the "DIP Budget"). Any customer receipts will be held in a separate lockbox (x-1794) bank account at Wells Fargo. Through this motion, the Debtors seek authority to operate the Cash Management System postpetition.

### A. Business Forms and Investment and Deposit Practices

13. In the ordinary course of business, the Debtors may use a number of checks, business letterhead, purchase orders, invoices, envelopes, promotional materials, and other business forms and correspondence (collectively, the "Business Forms"). Given that the Debtors used the Business Forms prepetition, they do not include references to the Debtors' current status as debtors in possession. Most parties doing business with the Debtors undoubtedly will be aware of the Debtors' status as debtors in possession as a result of the publicity surrounding the Chapter 11 Cases and the notice of commencement of the Chapter 11 Cases that will soon be provided to parties in interest. Requiring the Debtors to change existing Business Forms would unnecessarily distract the Debtors from their restructuring efforts and impose needless expenses on the estates, without any meaningful corresponding benefit.

---

[2] The Debtors believe that Exhibit A is a complete list of their Bank Accounts. To the extent that any Bank Account has been omitted from that list, the Debtors request that the interim and final orders granting the relief sought herein apply to all Bank Accounts actually in, or linked to, the Cash Management System.

10425302v6

**B.      Intercompany Transactions**

14.     In the ordinary course of business, Tri-Point makes payments on behalf of the other Debtors (the "Intercompany Transactions"). The operating disbursement account (x-1786) is responsible for facilitating the cash transfers among the following accounts: collections account (x-1794) and payroll disbursement account (x-1689).

15.     The Debtors seek authority to continue the Intercompany Transactions postpetition. Because the Debtors engaged in the Intercompany Transactions on a regular basis prepetition and such transactions are common for enterprises like the Debtors, the Debtors believe that they may continue the Intercompany Transactions in the ordinary course, as contemplated by section 363(c)(1) of the Bankruptcy Code, without court approval. Nonetheless, out of an abundance of caution, the Debtors seek express authority to continue engaging in the Intercompany Transactions. For the avoidance of doubt, by this Motion, the Debtors do not seek authority to make any Intercompany Transactions to non-Debtor entities.

16.     Failure to continue the Intercompany Transactions in the ordinary course of the Debtors' business would unnecessarily hinder operations (e.g. inability to pay vendors, suppliers, employees, tax authorities, etc.). Absent the continuation of the Intercompany Transactions, the Debtors' ability to operate their business during the Chapter 11 Cases would be prejudiced, and their ability to maximize value for creditors would be reduced. Avoiding such hindrances by continuing the Intercompany Transactions is, therefore, in the best interests of the estates. The Debtors therefore request that the Court authorize them to continue the Intercompany Transactions in the ordinary course of business.

**RELIEF REQUESTED**

17.     The Debtors are requesting authority from the Court to implement their Cash Management System, continuing to use their existing Business Forms, and paying, on an ongoing

basis, any related bank fees as they come due. The Debtors are respectfully requesting this authority on an interim basis and request a final hearing within approximately 21 days of the Petition Date to consider this Motion on a final basis.

## BASIS FOR RELIEF

**A.     The Court Should Authorize the Cash Management System**

18.     To the extent that use of the existing Cash Management System is beyond the ordinary course of the Debtors' business, such use is permitted by Bankruptcy Code sections 363(b)(1) and 105(a). Bankruptcy Code section 363(b)(1) provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Bankruptcy Code section 105(a) further provides that the Court may "issue any order . . . that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

19.     Where there is a valid business justification for using property outside the ordinary course of business, the law presumes that, "in making a business decision the directors of a corporation acted on an informed basis, in good faith[,] and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

20.     Courts have noted that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *See, e.g., In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part, rev'd in part*, 1992 U.S. Dist. LEXIS 9460 (D. Del. July 6, 1992), *aff'd in part, rev'd in part*, 997 F.2d 1039 (3d Cir. 1993), *cert. denied sub nom. Official Comm. of Unsecured Creditors v. Columbia Gas Transmission Corp.*, 510 U.S. 1110 (1994).

7

21. The Debtors' ability to continue their Cash Management System is essential to the normal course of business operations and a sales process. The Cash Management System and applicable procedures employed by the Debtors constitute essential business practices. It would be unduly difficult and expensive for the Debtors to establish a new cash management system. For example, altering the Cash Management System could disrupt payments to employees and key vendors and impose a serious administrative burden on the Debtors. The Debtors therefore request permission to use their existing Cash Management System on an interim basis until a final hearing to consider the Motion on a final basis.

22. Allowing the Debtors to use the Cash Management System will facilitate a smoother transition into chapter 11 and will aid the Debtors' in their sales efforts. Given the scope of the Debtors' operations and the corporate structure of the Debtors' operating entities as described in the First Day Declaration, the Cash Management System and other relief requested herein will enable the Debtors and other parties in interest to ensure that transactions are readily ascertainable and adequately documented.

B. **The Court Should Authorize Continued Use of the Bank Accounts and the Business Forms.**

23. The U.S. Trustee Guidelines, among other restrictions and requirements, prohibit disbursements other than by numbered checks, which must include the debtor's case name and case number, a "debtor in possession" designation, and an indication of the account type. Rigid adherence to the U.S. Trustee Guidelines would require, among other things, closure of prepetition bank accounts, the opening of new accounts, and the immediate printing of new checks with a "Debtor in Possession" designation on them. Enforcement of the U.S. Trustee Guidelines in the Chapter 11 Cases would disrupt the Debtors' business operations, impose burdensome expenses on the estates, and unnecessarily distract the Debtors from their sales efforts. *See In re Gaylord*

8

*Container Corp.*, No. 92-3654, 1993 WL 188671, at *3, 13 (E.D. La. May 24, 1993) (finding that the banking requirements of the U.S. Trustee were "a substantial burden on any debtor and . . . resulted in the incurrence of extraordinary unquantifiable costs to the debtor . . .").

24. In the ordinary course of business, the Debtors may also use other various Business Forms, including, but not limited to, business letterhead, purchase orders, invoices, envelopes, promotional materials, and other business forms and correspondence. To minimize expenses, the Debtors seek authority to continue using the Business Forms, substantially in the forms existing immediately before the Petition Date and without any reference in such forms to the Debtors' status as debtors in possession. As with the Bank Accounts, requiring the Debtors to change their existing Business Forms would unnecessarily distract the Debtors from their restructuring efforts and impose needless expense.

25. Authorizing continued use of both the Bank Accounts and the Business Forms will make the Debtors' transition into chapter 11 smoother, less costly, and more orderly. Accordingly, the Debtors request that the Court exercise its equitable powers under Bankruptcy Code section 105(a) to waive compliance with the U.S. Trustee Guidelines and authorize the Debtors to continue using their existing Bank Accounts and existing Business Forms in the ordinary course of business.

C. **The Court Should Authorize the Debtors to Honor Certain Prepetition Obligations Related to the Cash Management System.**

26. Contemporaneously with the filing of this Motion, the Debtors have filed various motions for authorization to pay certain prepetition obligations. With respect to other obligations, once the Court authorizes, the Debtors intend to issue checks postpetition on account of the applicable prepetition debt.

9

27. In addition, in connection with the Cash Management System, the Debtors incur limited fees and other charges in connection with Bank services, dishonored or returned checks, and other obligations (collectively, the fees and charges, the "Bank Account Claims").

28. As with the Cash Management System, payment of the Bank Account Claims will minimize disruption to the Debtors' operations and is therefore in the best interests of the estates. Absent payment of the Bank Account Claims, the Bank might assert offset rights against the funds in the Bank Accounts on account of the Bank Account Claims, freeze the Bank Accounts, and/or refuse to provide services to the Debtors. The payment of Bank Account Claims will not prejudice unsecured creditors given that, as noted above, the Bank may have setoff rights with respect to the Bank Account Claims.

29. Accordingly, under Bankruptcy Code sections 105(a) and 363(b), the Debtors seek authority, in their sole discretion, to pay and/or reimburse the Bank in the ordinary course of business for any Bank Account Claims arising prior to or after the Petition Date. The Debtors further request that the Bank Account Claims be granted administrative expense priority status pursuant to Bankruptcy Code section 503(b).

**D.    The Court Should Authorize the Debtors to Continue to Engage in Certain Intercompany Transactions in the Ordinary Course of Business.**

30. Bankruptcy Code section 363(b)(1) authorizes a debtor in possession to use property of the estate other than in the ordinary course of business, after notice and a hearing. Courts have held that there must be some articulated business justification for using, selling, or leasing property out of the ordinary course of business under section 363(b). *See, e.g., Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of

10

property of the estate . . . , courts require the debtor to show that a sound business purpose justifies such actions.").

31. The Debtors have routinely engaged in the Intercompany Transactions in the ordinary course of business, and submit that the continuation of the Intercompany Transactions would be within the ordinary course of business. Out of an abundance of caution, however, the Debtors seek authority to enter into such postpetition Intercompany Transactions in the ordinary course of business. If the Debtors are permitted to continue entering into the Intercompany Transactions in the ordinary course, the Debtors will continue to maintain records of the Intercompany Transactions, including records of intercompany accounts receivable and accounts payable.

32. As noted above, pursuant to Bankruptcy Code section 363(b)(1), debtors in possession are authorized to use property of the estate other than in the ordinary course of business after notice and a hearing. The Intercompany Transactions facilitate the Debtors' day-to-day operations and payments associated with the Intercompany Transactions are important sources of liquidity for the Debtors. Without the ability to continue supporting the Debtor affiliates through the Intercompany Transactions, the Debtors' future cash flows and ongoing operations may be jeopardized, to the detriment of the Debtors and their estates. Relief under Bankruptcy Code section 363(b)(1) is appropriate as the Debtors' continuation of entering into postpetition Intercompany Transactions is well within their sound business judgment.

33. Additionally, the Debtors request that the Court authorize the Debtors, in their sole business judgment, to continue the Intercompany Transactions to preserve the value of the Company as a whole and to preserve and enhance the value of the Debtors' estates. The Debtors, as debtors in possession with fiduciary duties towards their respective stakeholders, are under an

obligation to "protect and preserve the estate, including an operating business's going-concern value." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). In some instances, the Debtors may fulfill their fiduciary duties "by the preplan satisfaction of a prepetition claim," if the payment "is the only means to effect a substantial enhancement of the estate." *Id.*

34. Finally, because effectively the Debtors will be lending and borrowing cash on a postpetition basis, the Debtors request that claims arising from post-petition Intercompany Transactions among Debtors be granted administrative expense priority status under Bankruptcy Code sections 364(a) and 503(b)(1).

35. This treatment is consistent with Bankruptcy Code section 364(a), which provides that, unless the Court orders otherwise, the Debtors are authorized to incur unsecured debt in the ordinary course of business allowable as an administrative expense under Bankruptcy Code section 503(b)(1). 11 U.S.C. § 364(a). The requested relief is also an appropriate exercise of this Court's equitable powers under Bankruptcy Code section 105(a) and is further appropriate under Bankruptcy Code section 363. *See, e.g., In re Gen. Growth Props.*, 412 B.R. 609, 610 (Bankr. S.D.N.Y. 2009) (holding that debtors were authorized to continue prepetition cash management practices, including intercompany transactions, under Bankruptcy Code sections 105(a) and 363(c)).

36. The relief requested is in the best interests of the Debtors, their estates, creditors, stakeholders, and other parties in interest, and therefore should be granted. Accordingly, the Debtors respectfully request that the Court grant this Motion on an interim basis and schedule a final hearing within approximately 21 days of the Petition Date.

### WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)

37. Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of

the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(h). As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate without interruption and to preserve value for their estates. Accordingly, the Debtors respectfully request that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## RESERVATION OF RIGHTS

38.     Nothing contained in this Motion is or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an assumption or rejection of any executory contract or unexpired lease pursuant to Bankruptcy Code section 365; or (e) otherwise affect the Debtors' rights under Bankruptcy Code section 365 to assume or reject any executory contract with any party subject to this Motion. All payments made pursuant to the interim and final orders approving this Motion shall be consistent with the terms of any interim or final orders approving the Debtors' use of cash collateral and the budget approved pursuant thereto.

## NOTICE

39.     Notice of this Motion will be given to: (a) the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee"); (b) counsel for Wells Fargo Bank, NA; (c) counsel for FR XIII Charlie AIV, L.P.; (d) the United States Attorney's Office for the Southern District of Texas; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; (g) the state attorneys general for states in which the Debtors conduct business; and (h) all parties that have requested or that are required to receive notice pursuant to Rule 2002 of the Bankruptcy Rules.  The Debtors submit that, under the circumstances, no other or further notice is required.

10425302v6

## CONCLUSION

40. The Debtors respectfully request that the Court enter interim and final orders, substantially in the forms attached, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: March 16, 2020
       Houston, Texas

**PORTER HEDGES LLP**

By: */s/ Joshua W. Wolfshohl*
    Joshua W. Wolfshohl (TX 24038592)
    Aaron J. Power (TX 24058058)
    Genevieve M. Graham (TX 24085340)
    Michael B. Dearman (TX 24116270)
    1000 Main Street, 36th Floor
    Houston, Texas 77002
    Telephone: (713) 226-6000
    Fax: (713) 226-6248

**PROPOSED COUNSEL FOR DEBTORS AND DEBTORS IN POSSESSION**